UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-870 (RJL) |
| | ) | |
| YOUNES MUBARAK ALRASHEEDI, | ) | **FILED** |
| a.k.a., YOUNIS MUBARAK SALEH | ) | |
| | ) | **JUL 1 1 2013** |
| Defendant. | ) | |

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(July _10_, 2013) [Dkt. #9]

The United States ("plaintiff" or "the government") filed this action to denaturalize

defendant Younes Mubarak Alrasheedi (a.k.a., Younis Mubarak Saleh) ("defendant" or

"Alrasheedi") pursuant to 8 U.S.C. § 1451(a). *See generally* Compl. [Dkt. #1]. The

complaint alleges that during his naturalization proceedings, Alrasheedi concealed a

number of material facts about his immigration history, *id.* ¶¶ 22–37, including that he

previously used a false identity in an unsuccessful asylum application and that he was

ordered removed when that application was denied, *id.* ¶¶ 7–16. Thus, according to the

government, Alrasheedi was never entitled to lawful permanent resident status or legal

naturalization. *Id.* ¶¶ 38–81. The government therefore asks this Court to set aside the

order admitting Alrasheedi to citizenship, cancel his Certificate of Naturalization, bar

defendant from claiming any rights or privileges of citizenship in the future, and require

defendant to surrender his Certificate of Naturalization and any other documents indicating that he is a citizen of the United States. *Id.* at 14–15. Plaintiff's Motion for Summary Judgment [Dkt. #9] is now before the Court. Upon consideration of the pleadings, relevant law, and the entire record therein, plaintiff's motion is GRANTED.

## ANALYSIS

The government filed its complaint in this case on May 31, 2012, and it served defendant in person approximately a week later, on June 9, in Jeddah, Saudi Arabia. Return of Service/Affidavit [Dkt. #5].[1] On July 24, 2012, the government filed a Notice of Defendant's Request for Extra Time to Respond to Complaint [Dkt. #6]. The notice explained that defendant—who was unrepresented and living in Saudi Arabia at the time—had reached out to government counsel to request additional time to file an answer. *Id.* at 1. The government agreed that defendant's location and *pro se* status warranted granting an extension until September 7, 2012 for him to come to the United States, locate counsel, and file a responsive pleading. *Id.*

On November 27, 2012, the government filed a Status Report [Dkt. #7]. It stated that shortly after the July 24 Notice was filed, government counsel was contacted by Abby Ma, an attorney in Buffalo, New York, who said that Alrasheedi was in the United States and had retained her to represent him in this case. *Id.* at 1. At the end of September, however, Alrasheedi contacted government counsel directly and told her that

---

[1] This Court has jurisdiction under 8 U.S.C. § 1451(a) and 28 U.S.C. § 1345.

he was returning to Saudi Arabia and would no longer contest the government's action. *Id.* at 2. Ms. Ma confirmed the same. *Id.*

The United States moved for summary judgment on February 1, 2013.[2] *See* Pl.'s Mot. for Summ. J. [Dkt. #9] ("Pl.'s Mot."). In support of its motion, the government also filed a statement of undisputed material facts. *See* Pl.'s Statement of Material Facts [Dkt. #9-3] ("Pl.'s SOF"). Both were sent to defendant's last known addresses in Jeddah, Saudi Arabia and Phoenix, Arizona. *See* Pl.'s Mot. at 17; Pl.'s SOF at 11. On April 16, 2013, the Court issued an order again notifying defendant that a dispositive motion had been filed and explaining that failure to respond may result in the Court granting the motion. *See* Order [Dkt. #12] (citing *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988), and *Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992)). The order also quoted Federal Rule of Civil Procedure 56, describing the documentary evidence required to rebut the moving party's affidavits. *Id.* The Court gave plaintiff until May 31, 2013 to oppose the government's motion—a lengthy and unrequested extension justified only by defendant's *pro se* status and gravity of the relief requested by the government. Status Report [Dkt. #7].

With the May 31 deadline passed, Alrasheedi still has not opposed or otherwise responded to the government's motion for summary judgment. Under Local Rule of Civil Procedure 7(b), "[i]f [] a memorandum [in opposition to a motion] is not filed within the prescribed time, the Court may treat the motion as conceded." *See also Fox v. Am.*

---

[2] The government opted not to move for default judgment, as such judgments to be

*Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004) (trial court did not abuse its discretion by treating unopposed motion to dismiss as conceded); *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997) (motion for summary judgment conceded under predecessor to Rule 7(b)); *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) ("Where the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule."). This rule applies with equal force to *pro se* litigants, provided they have been notified of the dispositive motion and the requirements for opposing it. *See Howard v. Locke*, 729 F. Supp. 2d 85, 87 (D.D.C. 2010) (*pro se* plaintiff effectively conceded grounds for summary judgment by failing to address them in opposition).

In most cases, of course, the analysis would stop here. The Supreme Court, however, has held that in light of the gravity of denaturalizing a naturalized citizen, the government must nonetheless meet its burden of proving its charges "by clear, unequivocal and convincing evidence which does not leave the issue in doubt . . . . even in cases where the defendant has made default in appearance." *Klapprott v. United States*, 335 U.S. 601, 612–13 (1949). Fortunately for the government, it has met that burden.

The government's evidence clearly, unequivocally, and convincingly establishes that Alrasheedi's naturalization was both "illegally procured" and "procured by

---

disfavored in denaturalization cases. Status Report [Dkt. #7] at 2.

concealment of a material fact or by willful misrepresentation," either of which would

provide sufficient grounds for revocation. 8 U.S.C. § 1451(a). Through documentary

evidence and sworn declarations, the government has proven the following: Alrasheedi's

June 2000 application for asylum and withholding of removal contained false personal

information and a fabricated claim that he and his family had been persecuted in Somalia.

*See* Decl. of Sarah Rockelmann in Support of Pl.'s Mot. ¶¶ 7–9 [Dkt. #9-3, Ex. 1]

("Rockelmann Decl."). *Compare* Pl.'s SOF Ex. 2 (asylum application), *with* Pl.'s SOF

Ex. 6 (defendant's passport) *and* Pl.'s SOF Ex. 7 (defendant's adjustment of status

application). When Alrasheedi's asylum application was denied, he was charged with

removability under 8 U.S.C. § 1182(a)(6)(A)(i) and ordered removed to Somalia, which

he listed as his country of origin in the asylum papers. Rockelmann Decl. ¶¶ 14–17; Pl.'s

SOF Ex. 5. Finally, when he applied for lawful permanent resident status in 2001 and

naturalization in 2006, Alrasheedi denied ever using another name and omitted any

mention of his prior asylum application or order of removal. As such, the status

adjustment and naturalization applications were granted in 2003 and 2006, respectively.

*See* Pl.'s SOF Ex. 7, at 3 (application to adjust status); *id.* Ex. 9, at 8–9 (application for

naturalization); Decl. of Scott Rutter in Support of Pl.'s Mot. ¶¶ 13–23 [Dkt. #9-3, Ex.

12] (immigration officer's declaration regarding Alrasheedi's sworn statements in his

naturalization interview).[3]

---

[3] Defendant was required to give fingerprints with his asylum, status adjustment, and

The government therefore has established that Alrasheedi's naturalization was "illegally procured" in two respects. First, his willful misrepresentations in the June 2000 asylum application—and his subsequent misrepresentations and omissions in the status adjustment and naturalization applications—render him inadmissible and thus ineligible for lawful permanent resident status, which is a prerequisite to naturalization. *See* 8 U.S.C. § 1182(a)(6)(C)(i), (a)(9)(A)(i) (alien who has sought immigration benefits by fraud or willful misrepresentation or who has been removed is not admissible); § 1255(a) (alien must be admissible to be admitted for permanent residence); §§ 1427(a)(1), 1429 (alien must be admitted for permanent residence to be eligible for naturalization). Second, Alrasheedi's false testimony made under oath in his naturalization proceedings precludes him as a matter of law from establishing the "good moral character" required for naturalization. 8 U.S.C. § 1101(f)(6) ("false testimony for the purpose of obtaining any [immigration] benefits" precludes finding of good moral character); § 1427(a)(3) ("good moral character" requirement).

Finally, the government has presented sufficient evidence in the form of documents and declarations for me to find that Alrasheedi's naturalization should be revoked because it was "procured by concealment of a material fact or by willful

---

naturalization applications. Rockelmann Decl. ¶¶ 11, 21, 24. Analysis by a Certified Latent Print Examiner, Heather Wigington, confirms that the same individual (Alrasheedi) submitted all three forms. *See* Decl. of Heather Wigington in Supp. of Pl.'s Mot.

¶¶ 8–10 [Dkt. #9-3, Ex. 13]; *see also* Rockelmann Decl. ¶¶ 28–29

misrepresentation." 8 U.S.C. § 1451(a). As such, the evidence is clear and convincing that Alrasheedi was naturalized *only* because he willfully misrepresented and concealed material facts in his application and interview. *See Kungys v. United States*, 485 U.S. 759, 767 (1988) (listing elements needed to revoke naturalization under "procured by concealment of a material fact or by willful misrepresentation" provision). Indeed, had Alrasheedi been *truthful* in his naturalization application and interview, he would have revealed himself to be not only statutorily *ineligible* for naturalization, but also subject to an outstanding removal order. *See supra.* The Court must thus revoke defendant's naturalization, and it rules accordingly.

## CONCLUSION

For all the foregoing reasons, plaintiff's Motion for Summary Judgment [#9] is GRANTED. An appropriate order shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge